JOHN B. MELVIN *vs.* JAMES A. MELVIN, Adm'r *c. t. a.* of AVRA MELVIN.

When the competency of a witness is objected to on the ground of interest, the interest should *be shown to exist,* and must be certain and direct and not possible only; and where the interest is doubtful, the objection goes to the credit and not to the competency of the witness.

A testator, by his will, gave to his wife all his personal property "during her life, and to dispose of it as she pleases, after my death, among our children." In an action of *replevin* by the administrator to recover certain slaves alleged to belong to the testator's estate, one of the sons was offered as a witness for the plaintiff. HELD, that he was a competent witness.

The witness did not stand in the character of distributee or residuary legatee, nor had he any interest in *any particular* chattel left to the mother, who, though she must give a part to each child, could give any part she pleased, so that it was not an illusory portion, and was not bound to give the witness any part of the slaves in dispute.

*Melvin vs. Melvin.*

The relationship and expectations of the witness do not disqualify him, no matter how strong the bias under which he may swear.

A possible interest will not disqualify, nor will a mere probability of benefit, where there is no legal right or interest in the fund in controversy.

That cannot be considered a certain, direct, existing, interest in property, which the witness does not at present and may never enjoy, except at the will or discretion of another person, whom he may or may not survive.

APPEAL from the Circuit Court for Somerset county.

*Replevin* by the appellee, to recover two slaves alleged to belong to the estate of his testator, in the possession of the appellant. Pleas, *non cepit,* property in defendant, *non cepit infra tres annos,* and *actio non accrevit infra tres annos.*

*Exception.* The plaintiff, to maintain the issues on his part, proved the taking of the property by the defendant, and offered in evidence the letters of administration granted to him upon the personal estate of Avra Melvin, deceased, and the will of said Avra thereto annexed, the first item of which is:—*"First.* I give to my wife, Caty J. Melvin, all my personal property during her life, and to dispose of it as she pleases, after my death, among our children." Subsequent clauses disposed of his real estate and made bequests of money to several of the testator's children. The plaintiff then offered to introduce William W. Melvin, who was proved to be the son of said Avra and his wife, Caty, in said will mentioned, "to the competency of which witness, by reason of his interest in the event of this suit under the first clause of said will," the defendant objected, which objection the court (SPENCE, J.,) overruled, and admitted the witness to testify for the plaintiff as competent. To this ruling the defendant excepted, and the verdict and judgment being against him, appealed.

There was also an exception taken by the plaintiff, but it need not be stated.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Wm. S. Waters* for the appellant, argued:

1st. As to the form of the *exception* and what is embraced

by it: It is said, there is nothing in the record to show that the witness testified at all or to material facts, but the fair inference from the exception is, that he swore to material facts, for he could legally testify to no others. The exception begins by stating, that the plaintiff, to *"maintain the issues on his part,"* proved, &c., and that he then offered this witness, whose testimony was objected to, but the court admitted him *"to testify for the plaintiff as competent."* He was *offered generally,* and the court decided he was competent; and the only construction to be given to the exception is, that upon the proper construction of *the will* of the deceased, the witness was *interested.* The exception can only embody the light shed upon the proposition at the time it was taken, how then could it state the testimony of the witness *which had not then been given?*

2nd. We say then that the witness has an interest under the first clause of this will. The power cannot be exercised by the widow so as to exclude him. 4 *Md. Rep.*, 11, *Torrance vs. Torrance.* He must have a substantial share and not an illusory one, and this share will be increased or diminished by the event of this suit. What would be a substantial share, if a small fund might be an illusory one in a large fund, and an interest, *however small,* disqualifies a witness. 1 *Sugden on Powers,* 561, in 15 *Law Lib.*, 297, and the cases there referred to. 5 *Ves.*, 849, *Kemp vs. Kemp.* 1 *Story's Eq.*, sec. 255.

3rd. The interest of the witness is a *vested* one under this particular clause. The objects to receive the interest are designated by language sufficiently certain to be the children who are living at the death of the testator. It was a *vested* interest, subject to be *divested* by the appointment of the widow. 2 *Sugden on Powers,* 175, in 16 *Law Lib.*, 96. 1 *Roper on Legacies,* 430. 6 *Madd. Ch. Rep.*, 194, *Robinson vs. Smith.* 2 *Ves., Jr.*, 333, *Malim vs. Keighley.* 1 *Do.*, 299, *Boyle vs. Bishop of Peterborough.* 5 *Do.*, 744, *Reade vs. Reade.* 2 *Spence's Eq.*, 83, 84.

4th. If the interest should be contingent, until the contingency arises the estate is vested in the witness as next of kin and distributee. 2 *Sugden on Powers,* 2. 1 *Ambler,* 364, *Gordon vs. Levi.* 4 *Term Rep.*, 65, *Doe vs. Martin.*

*Wm. Tingle* for the appellee, argued:

1st. The only question presented to the court below was, whether the witness took any legal, certain, fixed and immediate interest *under the first clause of the will*, and this forms the only question for review by this court, under the act of 1825, ch. 117. The question was not, whether, until and in default of appointment by the mother, the reversionary interest in the residue would not, in part, devolve upon the witness as undisposed of, and render him interested in augmenting the residue by a recovery of the slaves in dispute? No such question was presented to or passed upon by the court below. The exception raises a question of interest under the will, and not one under the statute of distributions; and to show that this court will be confined to the specific point or question made below; and that in regard to objections to the competency of witnesses, the ground of objection assigned below forms the question or point to be reviewed within the contemplation of the act of 1825, ch. 117: see 1 *Gill*, 372, *Boarman vs. Israel;* 5 *G. & J.*, 489, *Grahame vs. Harris;* 5 *Md. Rep.*, 58, 82, 540. Before the passage of that act, its policy was enforced by appellate tribunals in regard to objections to the competency of witnesses, by refusing to listen to objections raised in the appellate court and not assigned below; and by requiring the ground of objection to be always stated below, that the opposite party might, if in his power, remove it by release or otherwise. 10 *Martin La. Rep.*, 633, *Bernard vs. Vignaud*. 3 *Cow. Phill. Ev.*, 155, *note* 112. 14 *Penn. State Rep.*, 59, *Mills vs. Buchanan*. 4 *McCord*, 311, *Cotchet vs. Dixon*. 6 *Conn.*, 232, *Chance vs. Hine*. 14 *Seargt. & Rawle*, 178, *Boyer vs. Kendall*. 11 *Wheat.*, 199, *Hinde vs. Longworth*.

2nd. The interest to render a witness incompetent must be legal, fixed, certain and immediate. 3 *Cowen's Phill. Ev.*, 130. 4 *Gill*, 213, *Crawford vs. Brooke*. 1 *Greenlf. Ev.*, sec. 408. 2 *Bl. Com.*, 119. Every witness is presumed to be competent till the contrary is shown beyond doubt, and it is incumbent upon the objector to show the incompetency. 1 *Greenlf. Ev.*, sec. 390. 1 *Phill. Ev.*, 86. 2 *H. & G.*, 176, *Mockbee vs. Gardner*. 3 *G. & J.*, 355, *Watts vs. Garrett*.

Melvin *vs.* Melvin.

To exclude a witness by reason of his interest in the event of the cause, or in the record, that interest must be seen to exist at the time he is called to testify. 4 *Gill,* 213. If there be doubt whether the witness have the disqualifying interest, he must be admitted and his credibility submitted to the jury. 3 *Term Rep.,* 27, 32, *Bent vs. Baker.* 1 *Esp.,* 169, *Rex vs. Cole.* 1 *Greenlf. Ev., sec.* 390. 3 *Rawle,* 407, *Hart vs. Heilner.*

3rd. There was no evidence that the mother had exercised her power under the first clause of the will, and independent of an exercise of the power by the mother in his favor, by giving him an interest in the slaves in contest, or in one of them, the witness could take no interest in either of them under the will. There are no words of gift to the children in the first clause, and the subsequent clauses show, that when the testator intended a gift, he expressed it. The mother was invested with a power to appoint the residuary reversionary interest in the undisposed of personal estate, and till appointed by her, and in default of appointment, it vested in the children of the testator, under the statute of distributions, and not under the will. 2 *Cox.,* 396, *Crossling vs. Crossling.* 2 *Call,* 524, *Morris vs. Owen.* 2 *Leigh,* 642, *Frazier vs. Frazier.* 4 *Md. Rep.,* 11, *Torrance vs. Torrance.* 1 *Richardson's Eq. Rep.,* 324, *Withers vs. Yeadon.* 2 *Story's Eq.,* sec. 1070.

4th. The mere investment of the mother with the power of appointment, could confer no interest upon any of the children. It was with her to exercise it or not. No court would compel her to exercise it. To make it imperative on her to exercise it, would defeat the object of its creation, which was to enforce filial obedience and respect during her own life. The husband did not intend to create a trust for the children, which they might enforce during the life of the mother, but a power to strengthen maternal authority. It being a power which she might exercise or not, at her option; she might never exercise it. No certainty of interest can then be predicated of the mere investment of the mother with the power of appointment. The only claim that the witness could make under the first clause of the will, would be to be considered

an object of the power. He could derive no interest under it, without showing that it had been exercised by the mother in his behalf. 4 *Kent,* 333. 2 *Sugd. on Pow.,* 93, 145. 1 *Johns. Ch. Rep.,* 26, 30, *Green vs. Winter.* 2 *Do.,* 155, *Murray vs. Finster.* If a recovery was had of the slaves, or either of them, although it would swell the residue, it would not enlarge the rights of the witness under the power. An enlargement of the residue would not necessarily enlarge the bounty of the mother.

5th. If the mother should exercise the power, it is conceded she would have to give some portion of the undisposed of residue to the witness; but a portion, however small and unequal, would satisfy the power, and a court of law would be bound to hold it good, and would not enter into the question of adequacy or sufficiency. 4 *Ves.,* 771, 785, *Vanderzee vs. Aclom.*

6th. The witness could not claim that the mother should assign to him either of the slaves in contest, or any interest in either of them. A distribution to him of any portion of the general undisposed of residue, would gratify the power; and that there was other residuary personal estate than the slaves in dispute, was apparent from the will which showed that the testator was a man of considerable real and personal estate. But whether there was or not, other residuary personal estate, is unimportant; as even supposing there had been no other, it would not have varied the result, as the mere investment of the mother with a power of appointment, could confer no interest in the slaves, or either of them, upon the witness.

7th. Had the question, whether the devolution of a part of the undisposed of residuary interest upon the witness, under the statute of distributions, would render him incompetent, been presented to the court below, the decision must have been the same. The interest of the witness in the undisposed of reversionary residue, was of too slight and precarious a nature to sway or endanger his integrity. It was of no higher character than that of a tenancy at will, and such tenant can testify in ejectment in behalf of his landlord, although his testimony may go to the support and continuance of his own

possession. *Gilb. Ev.*, 12. It is more and more the grow-ing policy of the law, ever since the case of *Bent vs. Baker*, 3 *Term Rep.*, 27, to suffer cases of doubtful influence in point of interest, to go rather to the credit than the competency of witnesses. Had that question been presented to the court below, the court could not have predicated a certain, fixed interest in the witness, when that interest was suspended upon the will of the mother.

8th. If, in the mind of the judge, it was doubtful whether the witness had a legal, fixed, certain and immediate interest in the event of the cause, under the first clause of the will or in the record, at the time of the trial, he could not do other-wise than let the witness be sworn. At the time of the trial, it did not appear whether the mother had exercised the power of appointment or not. For aught that appeared to the court, the mother might have exercised her power, and appointed the negroes in dispute to some other of the children, in which case the witness would have had no interest of any kind in the property in contest; or she might have appointed some portion of the general undisposed of residuum, other than the negroes in contest, to the witness, in full of his distributive share under an exercise of the power. It was then uncer-tain, at the time of the trial, whether the power had or had not been exercised, and whether the witness had any interest of any kind in the event of the suit, under the first clause of the will, and it being so uncertain, there was no certain inter-est to exclude him. It was incumbent on the appellant to have removed this uncertainty, and in the absence of removal the presumption of competency must prevail. 1 *Phill. Ev.*, 86. 1 *Greenlf. Ev.*, sec. 390. 21 *Eng. C. L. Rep.*, 374, *Clarke vs. Gannon.* 1 *Term Rep.*, 163, *Carter vs. Pearce.*

9th. Admitting, *argumenti gratia*, there was error in the decision of the court below, the judgment cannot be reversed upon this exception, according to established principles. The appellate court will make every fair intendment in favor of the judgment of a court of competent jurisdiction. 9 *G. & J.*, 15. The party excepting must show affirmatively that there

is error.  It is not sufficient to show that there is probably error, it must be clearly shown.  1 *Halst.*, 132, *Westcott vs. Garrison.*  7 *Ala.*, 19, *Knapp vs. McBride.*  To reverse a judgment upon the ground that an incompetent witness was received, the exception must show that his testimony was material.  9 *Missouri*, 166, *Samuel vs. Withers.*  Admitting, *argumenti gratia*, the court erred in admitting the witness, it does not follow that the verdict or judgment is erroneous.  It does not appear from the exception, (and there is but one before the court, beyond which the court cannot see or hear,) to what the witness testified ; it does not appear that he gave any evidence material to the issues, or either of them ; or, indeed, that he gave any testimony at all.  The court will make no intendment in favor of the exception, because that would be to make intendment against the judgment of a court of competent jurisdiction.  1 *Gill*, 84, *Wolfe vs. Hauver.*  6 *H. & J.*, 415, *Allegree vs. Md. Ins. Co.*  It is entirely consistent with the facts stated in the exception, that other witnesses were sworn, and that the verdict and judgment were rendered on their testimony.

TUCK, J., delivered the opinion of this court.

At the trial of this cause, the appellant objected to the competency of a witness offered by the plaintiff, on the ground of interest in the event of the suit, which objection was overruled and the witness admitted to testify for the plaintiff as competent. It does not appear that the evidence was material to the plaintiff, but in disposing of the case we will assume, that he did testify beneficially to the plaintiff, without deciding the points made upon the form of the exception.

The competency of witnesses has been much discussed. Neither judges nor elementary writers have agreed, in terms, in defining the test by which the disqualifying interest is to be ascertained.  In adopting, and, in some cases, perhaps, extending too far, the policy approved by Lord Mansfield, in *Walton vs. Shelly*, 1 *Term Rep.*, 300, of disregarding the subtle grounds on which the old cases were decided, and letting the objection go to the credit rather than the competency of the witness, the

use of different words in different cases has supplied arguments for a supposed conflict of opinion among judges, when, if considered with reference to the connection in which they are employed, they will be found to convey the same meaning.

We have examined the authorities, and find that the rules of law on this question are so fully stated by C. J. Buchanan, in *Watts vs. Garrett*, 3 *G. & J.*, 355, that the present case must be governed by it. It is there said: "When the competency of a witness is objected to on the ground of interest, the interest should appear. It should be seen by the court, in order that it may be enabled to determine its character, and whether it be such as to amount to a disqualification. It should not rest in mere conjecture or speculation, but should be shown to exist and to be certain and direct, and not possible only. For the bare possibility of an action being brought against the witness furnishes no objection to his competency. And where the interest is of a doubtful character, the objection goes to the credit and not to the competency of the witness." So, also, the witness must be shown to be certainly, and not *prima facie* and probably, interested, as where the brother-in-law and sister of a testator were offered to prove the execution of his will, it was held that they were competent, there being no evidence of his having left no children. *Deakins vs. Hollis*, 7 *G. & J.*, 311. According to *Prof. Greenleaf, vol.* 1, *sec.* 390, the true test is, that "the witness will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action; it must be a present, certain and vested interest, and not uncertain, remote or contingent;"—and, at sec. 386, that "it must be legal, certain and immediate, however minute, either in the event of the suit or in the record." This doctrine is sustained by the cases referred to, and as to the test suggested, especially by Buller, J., in *Bent vs. Baker*, 3 *Term Rep.*, 27, and *Van Nuys vs. Terhune*, 3 *Johns. Cases*, 82.

From the numerous decisions on this "perplexed question," we adduce the opinions of Lord Denman and C. J. Gibson, to show the interpretation placed by them on the same and similar expressions with those to be found in the Maryland decisions.

In *Shipton vs. Thornton*, 9 *A. & E.*, 314, it was held, that the objector must show the interest with certainty and clearness, and that it is not enough to give evidence of circumstances from which such interest is a probable inference. Under such a state of case, the testimony should go to the jury, to be weighed by the considerations alleged against it. C. J. Gibson, in *Bennett vs. Hethington*, 16 *Seargt. & Rawle.*, 195, ruled, that no matter how powerfully the witness might be operated on by having a similar case with the one under trial, although he might expect a benefit from the event, he would be competent, "unless implicated in the legal consequences of the judgment," by which he meant, "those which are fixed, certain and actual, and by which an advantage, not depending on a contingency, is to be gained or lost."

It is unnecessary to review the cases cited upon the law of trusts and powers, because, conceding that the bequest to the wife created a trust, according to the doctrines of these decisions, the interest of the witness, if any, does not appear to be of the existing, certain and direct character in the result of the suit, required to exclude a witness, according to the Maryland cases; nor could he have gained anything by the direct legal operation and effect of the judgment, according to the test in *Greenleaf;* nor have derived any advantage from the plaintiff's recovery, clear, fixed, certain and actual, and not depending on a contingency, as ruled by C. J. Gibson and Lord Denman.

If the mother were dead at the time of trial, without having executed the power of appointment, that fact should have appeared. We must assume that she was alive, and, if so, the supposed interest of the witness depended on more than one contingency. He did not sustain towards his father's estate the character of distributee, or residuary legatee, entitled to an undivided share of a surplus of which the property in contest would, if recovered, form a part. He had not, nor had any of the children, an interest in any particular chattel left to the mother. Although, under the power, if executed, she must have given a part to each, she might have given to each any part she pleased, provided it was not an illusory

portion, and was under no obligation to give to the witness any of the property in dispute. It was a matter of discretion with her to give him that or something else, and whatever her intention might be, it was liable to be changed, according to the circumstances in which she might find herself placed with reference to her children and their station in life.

It is true that if the plaintiff recovered, the estate over which the power was to be exercised would be increased, but it does not follow, as a legal consequence of the judgment, that the share of the witness would be enlarged, as in the case of a distributee or residuary legatee. After the recovery the witness had no greater legal interest in the property than he had before, whatever his chances or the probabilities may have been. A possible interest will not disqualify, as we have seen; nor will a mere probability of benefit, where there is no legal right or interest in the fund in controversy. *Bent vs. Baker, Smith's Lead. Cases,* 44. *Law Lib.,* 64. As far as this particular property is concerned, the witness sustained towards his mother, and the will of his father, no better relation than that of any child called to testify in behalf of his parent. The relationship and the expectations of the witness do not disqualify him, no matter how strong the bias under which he may swear, although he cannot help knowing, and too often feels, that a verdict in accordance with his testimony will increase his share of the estate, if his parent die intestate, and that he will be able to give more to each of his children if he should make a will.

Whether the children of the testator would, in the absence of an appointment by the mother, take under the supposed trust created by the will, or as distributees of an undisposed of residue, appears to be immaterial to the present question, since, according to the cases cited, the estate, if vested, is subject to be divested and defeated by the exercise of the power of appointment. And, in view of the reasons on which the rules of evidence governing questions of this kind are founded, that cannot be considered a certain, direct, existing interest in property, which the witness does not at present,

Falconer *vs.* Regelier.

and may never enjoy, except at the will and discretion of another person, whom he may or may not survive.

*Judgment affirmed.*